**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DIVANNA ALTAGRACIA NUNEZ
RODRIGUEZ-JIMENEZ MENCIA

           :
           :
           :

Petitioner,        :  Civil Action: 1:23-cv-05571
           :

vs.            :
           :

LUIS CLEY PORTES PAREDES,  :
           :

Respondent.       :

_____

## VERIFIED PETITION FOR RETURN OF CHILD TO SWITZERLAND AND ISSUANCE OF SHOW CAUSE ORDER

**The Convention on the Civil Aspects of International Child Abduction done, at The Hague on October 25, 1980; The International Child Abduction Remedies Act, 22 U.S.C. 9001 et seq.**

## INTRODUCTION

Petitioner, Divanna Altagracia Nunez Rodriguez-Jimenez Mencia (the "Mother"), by and through her undersigned attorneys files this Verified Petition for return of the child to Switzerland (hereinafter "Petition"), against Respondent, Luis Cley Portes Paredes, (the "Father"). The Petition is filed as a result of the Father's unjust and wrongful retention of the parties' daughter, K.L.P.P., born in Switzerland, age 6 (the "child").[1] The Father has removed the child from Switzerland to the United States, with the permission of the Mother for a limited time. The wrongful retention of the child occurred on or about August 9, 2022, when the child was supposed

_____

[1] Pursuant to Fed. R. Civ. P. 5.2(a), the minor child's initials are used here in lieu of her full name, her name has been redacted from all exhibits, her birthday is referred to herein only by the year of her birth and her birth has been redacted from all exhibits.

to be returned to Switzerland.  Mother purchased a return ticket for the child on September 4, 2023, and the Father has refused to return the child and wrongfully detained her in the United States.

1.   This Verified Petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (hereinafter the "Hague Convention" or "Convention")[2] and the International Child Abduction Remedies Act (hereinafter "ICARA").[3] A copy of the Hague Convention is attached to this Petition as **See Exhibit "A".** The Convention came into effect in the United States of America on July1, 1988 and has been ratified between, among other "contracting States" (as that term is defined in the Convention), the United States of America and Switzerland, *See* United States Department of State's Hague Abduction Convention Country List, available at:

http://travel.state.gov/abduction/resources/congressreport/congressreport_1487.html.

2.   The objects of the Convention are as follows: (1) to secure the immediate return of a child (or children) wrongfully removed or wrongfully retained in any Contracting state; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States, Convention, Art. 1.  Pursuant to Article 11 of the Convention, "judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of the children."  Thus, Mother asks the Court for expedited review and hearing of this Petition.

## **JURISDICTION AND VENUE**

3.   This Court has jurisdiction under 22 U.S.C § 9003(a) because this is an action arising under the Hague Convention and because this case involves the wrongful retention of a child under the age of sixteen from the child's habitual residence of Switzerland and the child is

---

[2] Oct. 25, 1980, I.I.A.S. No. 11,670 at 1, 2254 U.N.T.S. AT 98, reprinted in 51 Fed. Reg. 10494 (1986).
[3] 41 U.S.C. §§ 12601-11610 (2011).

currently located within the jurisdiction of this Court at Father's residence at 3913 Rombouts Avenue, Bronx, New York 10466.   This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action arising under Federal law and a treaty of the United States.

4.   This Court has personal jurisdiction over Father because, upon information and belief, he is presently within the Southern District of New York, will be personally served with process here, and is wrongfully detaining the Child in the district.

5.   Venue is proper in the District under 28 U.S.C. § 1391(b)(1) because Respondent resides in this district.

## STATUS OF PETITIONER AND CHILD

6. The Petitioner (Mother), and Respondent (Father), are the parents of K.L.P.P., (the "Child"). Mother and Father were never married.  K.L.P.P. is 6 years old.  A copy of K.L.P.P.'s redacted birth certificate is attached as **Exhibit "B"**.  The Convention applies to cases where a child under the age of sixteen years has been removed from his or her habitual residence[4] in breach

---

[4] The Supreme Court of the United States in *Monasky v. Taglieri*, 140 S. Ct. 719 (2020) finally established a uniform analysis to determine a child's habitual residence. In *Monasky*, the Court stated that habitual residence is heavily fact driven and should be determined by the totality of the circumstances making a fact driven inquiry that is "sensitive to the unique circumstances of the case and is informed by common sense." It held that "there are no categorical requirements for establishing habitual residence – least of all an actual agreement requirement for infants." The Court further stated that "[c]ommon sense suggests that some cases will be straight forward: Where a child has lived in one place with her family indefinitely, that place is likely to be [his]r habitual residence." *Id.* at 727.   Moreover, "Courts in both the United States and foreign jurisdictions have defined habitual residence as the place where [the child] has been physically present for an amount of time sufficient for acclimatization and which has a degree of settled purpose for the child's perspective."  *Pesin v. Rodriguez*, 77 F.Supp. 2d 1277, 1294 (S.D. Fl. 1999) (citations omitted), *aff'd, Pesin v. Rodriguez*, 244 F.3d 1250 (11th Cir. 2001); *Morris* at 1161 ("the law requires [the Court] to focus on the child in determining habitual residence"); *see also In re Robinson*, 983 F.Supp. 1339, 1341-42 (D. Colo. 1997).  It is a state of being or state of mind.  Habitual residence is the permanent physical residence of the child as distinguished from their legal residence or domicile.  *In re Bates*, No. CA 122-89, High Court of Justice, Family Div., England, February 23, 1989; *Brooke v. Willis*, 907 F.Supp. 57, 61 (S.D.N.Y. 1995); *see also T.B. v. J.B.*, 2000 WL 1881251, at *1 (Supreme Court of Judicature, England, December 19, 2000) (stating that it is important to remember that the Convention is concerned with the return of a child to the country of their habitual residence and not with their return to any particular person).

of rights of custody of a petitioner, which the petitioner had been exercising at the time of the wrongful removal[5] of the child.

7.    At the time of wrongful retention of the Child (as specifically set forth below), Mother was exercising custody rights within the meaning of Articles 3 and 5 of the Convention,[6] in that she is the Mother of the child and has exercised custody rights over the child since she was born.  Furthermore, the child habitually resided with Mother in Switzerland within the meaning of Article 3 of the Convention since she was born there, and until her wrongful retention in the Bronx, New York, in the United States of America.

8.  Mother has requested the return of the child.  The Request for Return is attached hereto as **Exhibit "C"**.  The Request for Return has been filed with the Federal Office of Justice, Central Authority in Matters of International Child Abduction in Switzerland on April 12, 2023, and the United States Department of the State, the central authority of the United States of America under the Convention, which asked the Father to return the child on May 10, 2023. **Exhibit "D"**.

9.  At the time immediately before the wrongful retention of the child, Father resided at 3913 Rombouts Avenue, Bronx, New York 10466 and Mother and child habitually resided in

---

[5] "Article 3 of the Hague Convention provides that the removal or retention of a child is wrongful where it violates the custody rights of another person that were actually being exercised at the time of the removal or retention or would have been exercised but for the removal or retention." *Lops*, 140 F.3d at 935;" "[t]he removal of a child from the country of his or her habitual residence is 'wrongful' under the Hague Convention if a person in that country is, or would otherwise be, exercising custody rights to the child under that country's law at the moment of removal." Friedrich v. *Friedrich*, 78 F.3d 1060, 1064 (6th Cir. 1996); *see Prevot v. Prevot*, 59 F.3d 556 (6th Cir. 1995); Convention, Art. 3.

[6] The issue of "custody" must be addressed under Switzerland law.  *See also Whallon v. Lynn*, 230 F.3d 450 (1st Cir. 2000); *Friedrich v. Friedrich*, 983 F.2d at 1402; *Ohlander v. Larson*, 114 F.3d 1531, 1541 (10th Cir. 1997)(stating that the Convention was meant, in part, to lend priority to the custody determination hailing from the child's state of habitual residence).  Pursuant to Article 14 of the Convention, this Court "may take notice directly of the law of…the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law…" *See also* Fed. R. Civ. P. 44.1.

Switzerland within the meaning of Article 3 of the Convention. The child went to school in Switzerland and was completely settled in Switzerland and integrated in Switzerland's culture.

10.     The Mother was born on May 2, 1990 in the Dominican Republic, moved to Switzerland in 1996 and grew up in Switzerland. The Mother is a Swiss citizen and holds a Swiss passport.

11. Pursuant to the Declaration of Shared Parental Responsibility dated December 23, 2020, Father was granted parenting time with the child for four weeks during summer holidays in even years beginning in 2021 and for two weeks during summer holidays and two weeks during Christmas holidays in odd years.  Father was to have parenting time with the child for two weeks in 2023 and the Mother had agreed for the child to stay longer this summer, until August 9, 2022. When the Mother asked for the child to return to Switzerland, the Father did not return the child. Mother paid for a return ticket for the child on September 4, 2023, but Father has not returned the child.  Mother has no direct communication with Father, but has communication with his partner, Ana Parra.  Father has blocked any calls from Mother and Ms. Parra has refused to allow the Mother to speak to the child.

12. The Father was born in the Bahamas on May 23, 1986, is a United States citizen and has a United States passport.

13.  The Father is holding the child. Mother believes the child is enrolled and goes to School in Bronx, New York, at Our Lady of Refuge School.

14.  The child is officially listed as missing by the Switzerland police. **See Exhibit E**.

## COUNT I-WRONGFUL RETENTION OF CHILD BY FATHER UNDER THE CONVENTION AND THE ACT

15.   The Convention applies to cases where a child under the age of sixteen (16) years has been removed or retained from his or her habitual residence in breach of rights of custody of a Petitioner, which the Petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child.

16. The Child is under the age of sixteen (16).

17. The habitual residence of the Child is Switzerland, where she was born and has always lived before being taken to the United States.

18. The Child had lived in Switzerland since her birth and had settled and integrated into Switzerland lifestyle and culture. The Child has lived her whole life in Switzerland with her family and friends, established close relationships, friendships, and socialized with same.

19. At the time of the Father's wrongful retention of the child in the United States, the Mother had and continued to have rights of custody under Switzerland law.

20.   The Custody law in Switzerland is by Article 301a, attached to the Request for Return (**Exhibit "C"**) states:

Under Swiss Laws and Regulations, when the parents share parental responsibility (legal custody) for their minor child, pursuant to Article 301a:

> Parental responsibility includes the right to decide on the child's place of residence.  If parents exercise joint responsibility and if one parent wishes to change the child's place of residence, this requires the consent of the other parent or a decision of the court or the child protection authority if:
>
> a.  the new place of residence is outside Switzerland; or
>
> b.  the change of place of residence has serious consequences for the ability of the other parent to exercise parental responsibility and have contact.

21. Mother has rights of custody under Switzerland law cited above which establishes that both parents must affirmatively consent to the child leaving the parental home and her remaining away in the Bronx. The retention of the child in the Bronx, is therefore in violation of the Switzerland law.

22. At all times Mother had rights of custody with respect to the Child within the meaning of Article 3 of the Hague Convention.

23. At all times prior, the Mother exercised custody over the Child within the meaning of Articles 3 and 5 of the Hague Convention, in that among other things she has continuously and at all times lived with the Child and provided emotional support and well-being to the Child, and has provided financial support for her family.

24. The Mother has never consented to or acquiesced in the Respondent's wrongful retention of the Child in the United States.

25. The conditional consent of the Mother for the Father to take the Child to the United States was for two weeks in the summer as outlined in the parties Declaration on Shared Parental Responsibility to which the Mother agreed for the child to stay with Father for a longer period of time and the Father has refused to return the Child to Switzerland, despite the fact that the Mother purchased a return ticket for the child to return on September 4, 2023.

26. The Father's actions demonstrate a wrongful retention in that the Mother only consented for time over the two weeks allotted. Father has refused to return the child to Switzerland. Thus, the Father's willful act of parental child abduction, refusing to return the child demonstrates an interference with the Mother's custodial rights, and such rights would have been exercised, but for the child abduction.

27. Attempts have been made with Father for the voluntary return of the child to Switzerland through the State Department by letter to the Father dated May 10, 2023.

28. In light of the stated Switzerland law and the Convention, the child is currently being illegally held in custody, confinement and/or restraint by Father. Unless this Court takes immediate action to bring Father before the Court, irreparable harm will occur to the well-being of the child in that she is denied access to her Mother, home, school, friends, and culture because she is being wrongfully detained in the United States of America. Unless a show cause order is issued, Mother will continue to have no proper contact whatsoever with her child.

29. Accordingly, the Father has wrongfully retained the Child away from her habitual residence in Switzerland in breach of Article 3 of the Hague Convention.

30. As of today, Mother continues to be deprived of her parental rights to the Child.

31. On or about April 12, 2023, Mother filed her Hague Application with the Federal Office of Justice, Central Authority in Matters of International Child Abduction in Switzerland. **See Exhibit "C"**. The Application has been transmitted to the United States Department of State, the Central Authority of the United States of American under the Convention.

32. The Father has refused and continues to refuse to return the Child to Switzerland from the United States.

33. Upon information and belief, and information from the State Department, the Child is currently physically located within the Southern District of New York, with the Father at his present place of residence believed to be at 3913 Rombouts Avenue, Bronx, New York 10466.

34. Unless the Court takes immediate action to bring the Father before the Court, irreparable harm will continue to affect the well-being of the Child in that the Child will continue to be wrongfully detained in the United States and hence denied access to her Mother.

35. Unless an Order is issued for the immediate return of the Child to her habitual residence of Switzerland, Mother will continue to be denied her rights of custody over her Child and will be further deprived of any contact with the Child.

36. The Father's unlawful act of parental child abduction by failing to return the Child to Switzerland is a wrongful removal and retention, pursuant to Art. 3 and Art. 5 of the Convention. Father's action of child abduction invokes the remedies available, pursuant to the Hauge Convention, which is the "prompt" return of the child to Switzerland.

## COUNT II-ARTICLE 18 RETURN

37. The Mother restates and re-alleges the allegations contained in Paragraphs 1 to 36 as if fully set forth herein.

38. The Mother invokes Article 18 of the Convention, which grants this Court plenary power to order the child's return at any time.[7]

## PROVISIONAL AND EMERGENCY REMEDIES[8]

39. The Mother requests that the Court issue a Show Cause Order forthwith ordering the appearance of the Father and the child before this Court on the first available date on the Court's calendar and directing the United States Marshal to serve the Show Cause Order on the Father forthwith.[9]  An expedited hearing should be held within 6 weeks of this application.

---

[7] See Convention, art. 18; *see also* 51 Fed. Reg. 10, 494, 10,509 (1988)(legal analysis of the Hague Convention by the U.S. Department of State); *In re B. Del C. S.B.*, 599 F.3d 999, 1015-16 (9th Cir. 2009); *Alcala v. Hernandez,* 826 F.3d 161 (4th Cir. 2016) *de Silva v. Pitts*, 481 F.3d 1279, 1285 (10th Cir. 2007)("In fact, even if a defense is established, a court still has discretion to order the return of the child if it would further the aim of the Convention which is to provide for the return of a wrongfully removed child.")

[8] This Court "[i]n furtherance of the objectives of...the Convention...may take or cause to be taken measures under the Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." ICARA §9004.

[9] Such an approach is consistent with the approach of the district courts faced with equivalent concerns regarding the flight of a respondent following service of a petition for return under the Convention. *See Ohlander v. Larson*, 114 F.3d 1531, 1535 (10th Cir. 1997)(The Petitioner "secured an *ex parte* Order for Issuance of Warrant in

40.    Pursuant to ICARA § 9004, in a proceeding of a child, "[n]o court exercising jurisdiction…may…order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." ICARA § 9004.  In this case, the law referred to is that of New York.  In New York, the Uniform Child Custody Jurisdiction and Enforcement Act (hereinafter "UCCJEA") is the source for statutory law governing, *inter alia*, the resolution of both domestic and international child custody disputes and is codified at New York *Dom Rel. Law* §75 *et seq*.  New York law addresses the appearance of the parties and children in such cases in UCCJEA.  *Dom Rel. Law* §76-i.  That section authorizes the Court to order the appearance of the child and custodian or custodians together.  Ibid.  This Court therefore has the authority to issue a show cause order, ordering the appearance of the Father and child in that the provisions of 22 U.S.C. § 9004 can be met.

41.    The Mother further requests that this Court issue along with the Show Cause Order, an Order prohibiting the removal of  the child from the jurisdiction of this Court during the pendency of the proceedings in this Court, am Order taking into safe-keeping the Father's and the child's travel documents, and thereafter an Order setting an expedited hearing of the Verified Petition for Return of the Child to Switzerland.[10]  The Mother also requests that she be allowed to appear by contemporaneous means and that the attorneys may appear by virtual means (Zoom or other methods).

---

Lieu of Writ of Habeus Corpus from the district court, directing officers to take [the child] into protective custody and to release her to [the Mother], but prohibiting [the Mother] from removing [the child] from Utah pending further order.")

[10] Such a Petition may also be treated as an application for a Writ of Habeas Corpus itself.  *Zajaczkowski v. Zajaczkowska,* 932 F. Supp. 128, 132  (D.Md. 1996) ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus…pursuant to 28 U.S.C.A. § 2243"); *see also Ohlander,* 114 F.3d at 1535.

## UCCJEA DECLARATION

42. Pursuant to the details regarding the child that are required to be provided under the UCCJEA are as follows:

- From birth to July 9, 2022, the date the Father took the child to the United States, the child resided solely with the Mother, and remained in the United States past the two weeks Father was permitted parenting time with the child, as a result of his wrongful retention. Upon information and belief, the Father is living at 3913 Rombouts Avenue, Bronx, New York at the present time.

- As a result of the Father's wrongful retention of the child in the United States from Switzerland, the child has been physically located here.

- The Mother is unaware of any other proceeding in any jurisdiction that may affect the current proceeding.

- The Mother does not know of any person or institution not a party to the proceedings that has physical custody of the child or claims to have rights of parental responsibility or legal custody or physical custody of, or visitation or parenting time, with the child.

## NOTICE OF HEARING

43. Pursuant to ICARA § 9003(c), the Father will be given notice of any hearings in accordance with the UCCJEA.[11]

---

[11] The Convention itself does not specify any specific notice requirements, ICARA provides that notice be given in accordance with the applicable law governing notice in interstate child custody proceedings. ICARA § 9003(c).

## ATTORNEYS' FEES AND COSTS INCLUDING TRANSPORATION EXPENSES
## PURSUANT TO CONVENTION ARTICLE 26 AND ICARA § 9007

44.  The Mother has incurred expenses as a result of the wrongful retention of the child by the Father.  The Mother will submit a copy of all expenditures as soon as practicable and possible and will amend these costs, from time to time, according to proof and in light of further expenditure required because of the Father's wrongful retention of the child.

45. The Mother respectfully requests that this Court award all legal costs and fees incurred to date as required by ICARA § 9007, reserving jurisdiction over further expenses.

## RELIEF REQUESTED

WHEREFORE, the Petitioner Mother, DIVANNA ALTAGRACIA NUNEZ RODRIGUEZ-JIMENEZ MENCIA, respectfully requests the following relief:

A.  Allow Mother to testify by alternative means, i.e. Skype, telephone, video conferencing, or other contemporaneous means set by the Court, from Switzerland in any evidentiary hearing including the final hearing to avoid the costs of her travel to the United States; and

B.  That this court issue an Order directing the prompt return of the child to her habitual residence of Switzerland in accordance with Mother's rights under the laws of New York and Article 3, 5a, and 18 of the Convention; and

C.  That this Court issue a Show Cause Order forthwith, to be served by the United States Marshal which prohibits removal of the child from the jurisdiction of this Court and ordering the Father to surrender the child's American and Swiss passports and travel documents to the United States Marshal immediately upon the service of the Order, which shall be held for safekeeping by this court; and

D. That this Court issue a Show Cause Order forthwith to be served by the United States Marshal, commanding the Father to appear with the child in this Court to show cause why the child has been wrongfully retained in the United States kept from the Mother in contravention of Switzerland Law and why the child should not be returned to Switzerland immediately, where any appropriate custody matter may be determined by a Switzerland court under Switzerland law.

E. That if the Father fails to appear pursuant to this Court's Show Cause Order, that this Court issue an Order directing that the names of the child be entered into the National Police computer system (N.C.I.C.) missing persons section and that an arrest warrant immediately be issued for the Father; and

F. That this Court issue and Order providing for regular in-person and digital/telephone access with the child immediately and when and if Mother travels to the United States for and evidentiary hearing; and

G. That this Court set a final hearing date: and

H.  That this Court enter an Order directing Father to pay Mother's reasonable legal costs, fees, and expenses; and

I. Any such further relief as justice and its cause may require.

## VERIFICATION

I, Divanna Altagracia Nunez Rodriguez-Jimenez Mencia, do solemnly declare and affirm under the penalties of perjury under the laws of the United States of America that the factual averments in the foregoing Verified Petition are true and correct to the best of my knowledge, information and belief.

_____          6/29/2023
Divanna Altagracia Nunez Rodriguez-Jimenez Mencia          Date

Respectfully submitted,

/s/ Elliot H. Gourvitz

By: _____
        Elliot H. Gourvitz, Esq.
        Ari H. Gourvitz, Esq.
        Gourvitz & Gourvitz, LLC.
        505 Morris Avenue, Suite 102
        Springfield, New Jersey 07081
        Telephone: (973) 467-3200
        Facsimile:  (973) 467-4091
        ehg@gourvitz.com
        ahg@gourvitz.com
        *Counsel for Petitioner*