```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
```
                                                    USDC SDNY
                                                    DOCUMENT
                                                    ELECTRONICALLY FILED
                                                    DOC #:
                                                    DATE FILED: 03/15/2024
```

-------------------------------------------------------------------- X
                                                                     :
DIVANNA ALTAGRACIA NUNEZ RODRIGUEZ-                                  :
JIMENEZ MENCIA,                                                      :
                                                                     :      23-CV-5571 (VEC)
                                            Petitioner,              :
                                                                     :      <u>ORDER ADOPTING IN</u>
                  -against-                                          :      <u>PART AND MODIFYING</u>
                                                                     :      <u>IN PART A REPORT &</u>
LUIS CLEY PORTES PAREDES,                                            :      <u>RECOMMENDATION</u>
                                                                     :
                                            Respondent.              :
-------------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

On June 29, 2023, Petitioner Divanna Nunez, K.L.P.P.'s mother, brought an action under the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9000 *et seq.*, against Respondent Luis Portes, K.L.P.P.'s father, for improperly retaining K.L.P.P. in the United States. Pet., Dkt. 1. On August 10, 2023, the parties entered into a settlement agreement pursuant to which Mr. Portes agreed to return K.L.P.P. to Petitioner in Switzerland by August 31, 2023. Order, Dkt. 28. On August 22, 2023, Petitioner moved for an award of attorneys' fees and costs, and Respondent opposed the motion. Mot., Dkt. 29; Resp'ts Opp., Dkts. 38–39.

The Court referred this case to Magistrate Judge Moses for the preparation of a report and recommendation ("R&R") on the motion for fees and costs.[1] Order, Dkt. 35. On January 16, 2024, Magistrate Judge Moses entered an R&R recommending that Petitioner be granted $19,220.50 in attorneys' fees and $402 in costs. R&R, Dkt. 42. Respondent objected to the

---

[1] On August 22, 2023, the Court referred the motion to Magistrate Judge Moses as a non-dispositive motion. Order, Dkt. 34. On August 23, 2023, the Court amended the referral order to refer the motion as a dispositive motion requiring a report and recommendation. Order, Dkt. 35.

1

R&R.  Resp't Obj., Dkt. 47.  For the following reasons, the Court ADPOPTS in part the R&R and awards Petitioner $9,610.25 in attorneys' fees and $402 in costs.

## DISCUSSION

### I.     Legal Standard

In reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  As to the portions of an R&R to which no party objects, the Court may accept those findings provided that "there is no clear error on the face of the record." *Heredia v. Doe*, 473 F. Supp. 2d 462, 463 (S.D.N.Y. 2007) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *see also* Fed. R. Civ. P. 72(b) advisory committee's note.  Similarly, when objections are "merely perfunctory responses argued in an attempt to . . . rehash[] the same arguments set forth in the original papers," a "district court need only find that there is no clear error on the face of the record in order to accept the Report and Recommendation." *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (cleaned up).  An error is clear when the reviewing court is left with a "definite and firm conviction that a mistake has been committed." *See Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (quoting *McAllister v. United States*, 348 U.S. 19, 20 (1954)).

The Court must, however, "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  Although the Court need not consider arguments contained in the objections that were not raised initially before the magistrate judge,

see *Robinson v. Keane*, 1999 WL 459811, at *4 (S.D.N.Y. June 29, 1999), it may exercise its discretion to "receive further evidence" on *de novo* review, Fed. R. Civ. P. 72(b)(3).[2]

## II.     An Award of Fees and Costs Is Appropriate

In light of the extensive objections and additional evidence filed by Petitioner, the Court reviews *de novo* the award of fees and costs.[3]

ICARA provides that any court that orders the return of a child in an action brought pursuant to that statute "shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner . . . unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). Magistrate Judge Moses correctly found that Petitioner is a "prevailing party" because the consent order directed the return of K.L.P.P. to Ms. Nunez, and Respondent did not obtain any significant concession. *See* R&R at 9–10; *see also Webster-Colquhoun v. Colquhoun*, 2022 WL 2866470, at *2–3 (S.D.N.Y. July 21, 2022) (holding that a petitioner who obtains a consent decree ordering the child's return and in which respondent does not secure significant concessions is a "prevailing party"). The Court adopts the R&R's analysis as to its determination that Ms. Nunez is a prevailing party under ICARA and that she is entitled to an award of fees and costs. *See* R&R at 9–10.

Mr. Portes first objects to the R&R on the grounds that his relocation of K.L.P.P. to the United States was not wrongful, and that he "had a reasonable basis to believe that he was

---

[2]     In the R&R, Magistrate Judge Moses notified the parties that, pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), they had fourteen days to object to the R&R's findings, and that failure to object would result in both the waiver of objections and the preclusion of appellate review. *See* R&R, Dkt. 42 at 18 (using bold font).

[3]     The Court reviews the R&R's analysis as to the propriety of the hours billed, the attorneys' hourly rates, and costs sought for clear error because no party objected to those portions of the R&R. The Court adopts those determinations in full because careful review reveals no clear error. That said, the number of hours purportedly spent at the beginning of the case by an attorney experienced in Hague Convention cases appears to be on the high side of what is reasonable.

keeping his daughter in the United States on consent from the Petitioner."  Resp't Obj. at 3.  Mr. Portes submits text messages between Ms. Nunez and his girlfriend exchanged between August 2022 and September 2022 as evidence of Ms. Nunez's purported agreement that K.L.P.P. would enroll in school in New York.  Parra Aff., Dkt. 53.

Even if the Court were to credit Mr. Portes's argument that an informal agreement existed when those text messages were exchanged, that would not establish that he had a reasonable basis to keep K.L.P.P. in the United States through the date this action was commenced.[4]  Mr. Portes retained custody of K.L.P.P. even after receiving a letter from the U.S. Department of State advising him of the commencement of legal proceedings in May 2023 and after the academic year concluded — well beyond the point at which he could have reasonably believed Petitioner consented to K.L.P.P. remaining in the United States.[5]  See Pet.; R&R at 12.[6]  In short, given the history between the parties, Mr. Portes cannot show that an award of fees and costs "would be clearly inappropriate."  22 U.S.C. § 9007(b)(3).

### III.    The Court Reduces the Fee Award

Although this Court agrees that an award of fees is appropriate, it disagrees that an award of $19,220.50 in fees would be appropriate in light of Mr. Portes's financial status.  The Court reduces the fees award recommended by the Magistrate Judge by 50%, and awards Petitioner $9,610.25 in fees and $402.00 in costs.

---

[4]     Because the messages exchanged between Ms. Parra and Ms. Nunez appeared to be translated, the Court ordered Respondent to submit a certified translation of the messages and a sworn statement under penalty of perjury affirming the accuracy of those messages.  Order, Dkt. 49.  Respondent did so on March 1, 2024.  Parra Aff., Dkt. 53.

[5]     Ms. Nunez also submitted evidence tending to show that, in the months following the text messages submitted by Respondent, she explicitly demanded K.L.P.P.'s return.  Pet. Reply Ex. 1, Dkt. 55.

[6]     The R&R states that the State Department letter was dated May 10, 2022; the correct date is May 10, 2023.  See R&R, Dkt. 42 at 12; Letter, Dkt. 1-4.

In determining whether an award of expenses pursuant to ICARA would be "clearly inappropriate," courts rely "on the same general standards that apply when 'attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.'" *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). This includes "a respondent's inability to pay . . . ." *Souratagar v. Lee Jen Fair*, 818 F.3d 72, 81 (2d Cir. 2016). Courts must also consider whether a fee award would so financially devastate the respondent that it would impede his ability to care for the child. *See Onrust v. Larson*, 2015 WL 6971472, at *13 (S.D.N.Y. Nov. 10, 2015) (collecting cases).

After the R&R concluded that Mr. Portes "failed to meet his burden" of showing that his financial circumstances rendered the recommended fee award clearly inappropriate, Respondent submitted additional financial records, including bank statements, wage statements, and financial affidavits.[7] R&R at 13. Based on these additional submissions, the Court finds that Mr. Portes does not have the realistic ability to pay $19,220 in attorneys' fees.

Petitioner argues that the Court should not reduce the fee award based on inability to pay because there remain ambiguities as to the exact state of Mr. Portes's finances. Pet. Reply, Dkt. 55 at 3–5. Petitioner points to several deficiencies in Mr. Portes's filings. First, Petitioner notes that he has not provided statements for the money market account ending in 9473, although he was ordered to provide statements for all bank accounts. *See id*. at 3. Mr. Portes, however, explains that the account ending in 9473 corresponds to his debit card, *see* Portes Aff., Dkt. 54-1

---

[7] Respondent initially submitted several financial documents, including wage statements, tax returns, and certain bank records that appeared to reference an account ending in 9473. Resp't Obj. Exs. 2–4, Dkt. 47. The Court ordered Respondent to supplement his submissions with records of the account ending in 9473, records of any other accounts or assets, a complete statement of expenses and income, and a sworn statement affirming under penalty of perjury that his submissions represented a complete and accurate picture of his finances. Order, Dkt. 49. Respondent submitted additional documents in response to that Order on March 1, 2024. *See* Financial Aff., Dkt. 52; Portes Aff., Dkt. 54.

¶ 6, and has submitted a photo of his debit card that ends in 9473, *see* Card Photo, Dkt. 54-2. Mr. Portes has also sworn, under penalty of perjury, that he has no additional bank accounts. *See* Portes Aff. ¶¶ 3–4.

Second, Petitioner speculates that because the bank account statements do not reflect payments for expenses listed in his financial affidavit, including rent, utilities, garbage services, cable, internet, tuition, and groceries, Mr. Portes must have additional funds from which he pays those expenses. Pet. Reply at 3–4. The Court has no basis from which to infer the existence of additional, unreported assets, as these expenses may have been paid in cash or by his girlfriend Ms. Parra, to whom there are regular payments.[8] *See* Parra Aff. ¶ 1; *see also, e.g.*, Nov. 2023 Acct. #1773 Stmt., Dkt. 52-5 at 2–3. Mr. Portes has further sworn under penalty of perjury that he does not have additional assets or bank accounts. Portes Aff. ¶¶ 3–4.

Third, Petitioner argues that Mr. Portes does not indicate whether Ms. Parra contributes to the household income or expenses. Pet. Reply at 4–5. Mr. Portes's financial affidavit leaves blank the spaces for Ms. Parra's income and contribution to household expenses, which suggests she does not meaningfully contribute to the household's income and shared expenses. *See* Financial Aff. at 4, 11. Even if Ms. Parra did contribute, however, she is not responsible for paying the attorney fees awarded in this matter.

Although Mr. Portes could have been more detailed in his submissions, the record is clear that he does not have the financial resources to pay $19,220 in fees. To the extent there are minor inconsistencies or omissions in Mr. Portes's financial records, Mr. Portes has sworn, under

---

[8] Petitioner argues that Zelle payments to Brenly Varga, Sandra Arang, and Elizabeth Ul totaling $2,510 reflected in Respondent's bank statements indicate that he has an ability to pay the $19,220 fee award. Pet. Reply, Dkt. 55 at 4. As an initial matter, there is no indication that these payments were for anything other than the reported expenses. But even if these payments represent additional, unreported expenses, payments totaling $2,510 across six months do not indicate an ability to pay an award nearly eight times that amount.

penalty of perjury, that the provided documents "accurately represent [his] financial situation." Portes Aff. ¶ 8. Mr. Portes attests that he has $1,200 in assets and earns approximately $75,000 per year as a handyman.[9] Financial Aff. at 4; Portes Decl., Dkt. 47-6 ¶¶ 16–17. An award of fees more than sixteen times his total assets would be clearly inappropriate. *See Souratagar*, 818 F.3d at 81 n.3 (noting that an award "greater than a respondent's total assets . . . would, at a minimum, require a reasoned explanation"). Saddling Mr. Portes with a debt of nearly $20,000 would financially devastate him to the point of "imped[ing] respondent from visiting and caring for" K.L.P.P. *Sanguineti v. Boqvist*, 2016 WL 1466552, at *10 (S.D.N.Y. Apr. 14, 2016) (reducing fees award because of respondent's limited financial resources).

Nevertheless, the Court finds that an award of fees and costs is appropriate because Mr. Portes's "deliberate course of action to retain custody" — despite ample notice that such retention was improper — gave "rise to the fees and costs associated with the petition." *Id*. at *8. In light of Mr. Portes's representation that he was able to afford $5,000 annual tuition, *see* Portes Decl. ¶ 20, his retention of K.L.P.P., and the clear mandate of ICARA, the Court finds that an award of fees and costs totaling $10,012.25 does not impose an undue financial burden.

## CONCLUSION

For the foregoing reasons, the Report & Recommendation is ADOPTED in part. The Clerk of Court is respectfully directed to enter judgment in favor of Petitioner in the amount of $10,012.25 and to terminate the open motions at Dkts. 29 and 47.

**SO ORDERED.**

**Date: March 15, 2024**  
**New York, NY**

**VALERIE CAPRONI**  
**United States District Judge**

---

[9] As of February 2024, Mr. Portes held a combined $1,053.18 in cash in the accounts ending in 2553 and 1773, *see* Financial Aff. Exs. 2, 8, and an additional $100 in cash, *see* Financial Aff. at 4.